**FILED**

# UNITED STATES DISTRICT COURT
## District of Columbia

JAN 23 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Marcus Arvellos
2123 10th St. NW
Washington, DC 20001

V.

American International Health Alliance -- AIHA
1212 New York Ave. NW 20005
Washington, DC 20001 #750

and

Barbara P. Brocker
1212 New York Ave. NW 20005
Washington, DC 20001 #750

CIVIL ACTION NO.

CASE NUMBER 1:06CV00121

JUDGE: Gladys Kessler

DECK TYPE: Employment Discrimination

DATE STAMP: 01/23/2006

JURY ACTION

## COMPLAINT FOR DAMAGES

(Violation of the American with Disabilities Act/Civil Rights Violations/Intentional Infliction of Emotional Distress/Negligent Infliction of Emotional Distress)

The plaintiff Marcus Arvellos is an individual with a disability as defined under the ADA. Mr. Barbara P. Brocker, the organization's CFO and The American International Health Alliance (AIHA) terminated Mr. Arvellos' employment three hours after accomodation was requested, and granted by Mrs. Jocelyn Freeman from the organization' Human Reseources department. The reasonable accomodation was requested for a condition protected under the Americans with Disabilities ACT. The AIHA and Mrs. Brocker denyed the reasonable accomodation request after it was granted by HR amd immediately and negligently terminated Mr. Arvellos' employment therefore violating *Title I and IV of the Americans with Disabilities Act of 1990 (Pub. L. 101-336)*.

In June of 2004, the plaintiff was interviewed selected among many other qualified candidates for an exempt position as Senior Budget Analyst at the AIHA, an organization funded mostly by the USAID and other

1

government agencies. After the interview process, on July 8th, 2004, Mr. Arvellos was contacted by the AIHA and offered the position.

The plaintiff is a professional with a very solid budget experience and very strong reporting and business solutions skills. Prior to Mr. Arvellos acceptance of the offer of employment, the defendant made every possible effort to hire me, including accepting that Mr. Arvellos would start on the position one month after he accepted the offer and expressed how ecstatic the AIHA were to have me as part of their team.
My employments begin on August 9th, 2004. For the first three days, they treated me with utmost respect and were constantly praising me and expressing the organization's delight that I have accepted the position.

Mr. Arvellos' qualifications for the position were stated not only by the CFO, Mrs. Barbara Brocker but also by the Human Resources Manager, Mrs. Jocelyn Friedman and my immediate supervisor, Mr. Gary Herman. At that time, the plaintiff was diagnosed to be suffering from severe chronic anxiety and panic attacks and undergoing medical treatment for these conditions. Notwithstanding his disability, Mr. Arvellos was a qualified employee for his position, satisfying not only the skills required but also the experience, education, and all job-related requirements of the position Mr. Arvellos held at the AIHA.

As part of his treatment for both the chronic anxiety and panic attacks, the plaintiff's treating physician prescribed Mr. Arvellos XANAX and Effexor. The first dosage of Xanax dosage was prescribed to be administered in the morning to manage morning anxiety and panic attacks. Due to its sedative action, it is unsafe to drive an automobile until the sedative effects and drowsiness that occur have subsided. Since Mr. Arvellos drove to work and could only do so safely after the drowsiness and sedative feeling no longer presented a danger, the plaintiff was arriving at the office between 945am and 10am instead of 9 am. It is important to keep into consideration that I am a very dedicated professional and during my employment at the AIHA, the plaintiff left the office after 8pm and also have a state of the art office at home which enabled him to work from home in case it was necessary

On August 11th, 2004, the plaintiff stopped by the Human Resources office to meet with Mrs. Jocelyn Friedman in order to sign the remaining HR forms. After finished signed the forms, Mrs. Freedman asked Mr. Arvellos if there was a reason for his arrival at 10am. The plaintiff told Mrs. Freeman the truth about my conditions and the

medication he was taking and requested to have a flexible arrival schedule due to the effects of the medication he was taking. Mrs. Freeman was amazing and comforted me by saying that she was happy that he had shared that with her and that he had no reason to be embarrassed about it. She continued to express her support by mentioning that she had suffered from the same condition a few years earlier and she understood my need for requesting one hour flexibility in the morning. In addition she told Mr. Arvellos that his request was a perfectly reasonable accommodation and that she also knew that Mr. Arvellos could be available from my home office in the event that he had to be reached or provide any advice on budgets before 10 am since Mr. Arvellos have an office at home and had direct connection with the office' intranet. In addition, she again reiterated how happy the organization felt by having someone with Mr. Arvellos' professional skills to streamline the workload by bringing new automated solutions on the process of budgets templates and cost analysis.

The plaintiff left Mrs. Freeman (HR) office at 1130 am on August 11th. At 4pm on the same day the CFO, Mrs. Brocker, who hired Mr. Arvellos and was the one who made all the efforts to have Mr. Arvellos onboard, came into the plaintiff' office and told him that his position was terminated and that she would not even wait the 90 days period which was included in Mr. Arvellos' job offer signed by her when the position was offered. The plaintiff asked Mrs. Brocker four times if he she had spoken to Mrs. Freedman (HR) since he was informed that his request for accommodation on his arrival schedule was granted when he met with her a few hours later. Mrs. Brocker evaded the question the first three times the plaintiff asked and finally replied "That she was Mrs. Freedman superior and as CFO she did not have to consult with her about anything". The plaintiff realized then that she had in fact spoken with Mrs. Freedman and the reason for his discharge was due to Mrs. Brocker' unwillingness to employ and provide reasonable accommodation for a professional with Mr. Arvellos' disability. Also, the fact that the AIHA cancelled the plaintiff's COBRA insurance coverage after he had elected to receive coverage and had received the new insurance card from the insurance company indicated to the plaintiff that Mrs. Brocker and the AIHA did not want to have their group insurance to cover cost related to Mr. Arvellos' treatment.

Since during that week, the plaintiff was only meeting the head of departments, there was no basis to terminate his employment on professional or ethics merit. Furthermore, his work had not even been evaluated due to Mr. Arvellos' scheduled plan for the first week was solely to meet co-workers and become acquainted with the organization's accounting and reporting structures.

The sudden and unexplained circumstances of the plaintiff's termination took a severe toll on Mr. Arvellos condition to an extend that rendered Mr. Arvellos unable to work for more than a year and resulted in severe distress in my personal life including emotional pain and suffering, mental anguish, loss of enjoyment of life, injury to his professional standing, loss of health, fright, apprehension, loss of self-esteem, worsening anxiety and panick attacks, isolation, and grief.

### Relief Sought

Wherefore plaintiff demands judgment as follows:

1. Compensatory and general damages against the Defendants jointly and severally in the amount of $150,000 as to each count;
2. Punitive damages in the amount of $250,000 against the defendant AIHA as to each count;
3. Punitive damages in the amount of $150,000 against the defendant Barbara P. Brocker for intentional infliction of emotional distress and Negligent infliction of Emotional Distress
4. For reasonable attorney fees and costs associated with this action; and
5. For such other relief te Court may deem just and proper.

Respectfully submitted,

*/s/ Marcus Arvellos*
Marcus Arvellos
2123 10th St. NW
Washington, DC 20001

### JURY DEMAND

Plaintiff demands trial by jury as to all issues so triable.

*/s/ Marcus Arvellos*
Marcus Arvellos