# UNITED STATES DISTRICT COURT
## District of Columbia

Marcus Arvellos
2123 10th St. NW
Washington, DC 20001

CIVIL ACTION NO. 06-121

V.

American International Health Alliance -- AIHA
1212 New York Ave. NW #750
Washington, DC 20005

and

Barbara P. Brocker
1212 New York Ave. NW #750
Washington, DC 20005

## FIRST AMENDED COMPLAINT FOR DAMAGES

(Violation of the American with Disabilities Act/Civil Rights Violations/Intentional Infliction of Emotional Distress/Negligent Infliction of Emotional Distress)

### INTRODUCTION

The plaintiff Marcus Arvellos is an individual with a disability as defined by the Americans with Disabilities Act. Defendants, American International Health Alliance (AIHA) and its CFO, Barbara P. Brocker terminated Mr. Arvellos' employment three hours after he requested reasonable accomodation of his disability, which requested was appropriately granted by Mrs. Jocelyn Freeman in AIHA's Human Reseources department. Because Mr. Arvellos's request for reasonable accomodation was in

RECEIVED

MAR 24 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

connection with a condition protected under the Americans with Disabilities ACT. The AIHA and Mrs. Brocker subsequent deial of that request after it was granted by HR and immediately and negligently terminated Mr. Arvellos' employment violated *Title I and IV of the Americans with Disabilities Act of 1990 (Pub. L. 101-336)*.

## FACTUAL ALLEGATIONS

In June of 2004, the plaintiff was interviewed selected among other qualified candidates for an exempt position as Senior Budget Analyst at the AIHA, an organization funded mostly by the USAID and other government agencies. After the interview process, on July 8th, 2004, Mr. Arvellos was contacted by the AIHA and offered the position.

Mr. Arvellos is a professional with a very solid budget experience and very strong reporting and business solutions skills. Prior to Mr. Arvellos acceptance of the offer of employment, the Mrs. Brocker made every possible effort to hire Mr. Arvellos, including accepting that Mr. Arvellos would start on the position one month after he accepted the offer due to his commitments and responsibilities with his then current employer. Nevertheless Mrs. Brocker expressed how ecstatic the AIHA were to have me as part of their team.

The plaintiff's employment begins on August 9th, 2004. For the first three days, Mrs. Brocker interacted with Mr. Arvellos with utmost respect and was constantly praising Mr. Arvellos during business meetings where Mr. Arvellos shared with the defendant his approach to developed automated solutions that would greatly increase productivity and streamline AIHA 'reporting and budget systems. During those meetings, Mrs. Brocker repeatedly expressed that Mr. Arvellos professional expertise and dynamic approach to creative business solutions were exactly what both Mrs. Brocker and AIHA have been in need of and that

2

Mr. Arvellos had her full support. In addition, on all of these occasions, Mrs. Brocker re-emphasized the organization's delight that he had accepted the position.

Mr. Arvellos' qualifications for the position were stated not only by the CFO, Mrs. Barbara Brocker but also by the Human Resources Manager, Mrs. Jocelyn Freeman and plaintiff's immediate supervisor, Mr. Gary Herman. At time the plaintiff begin his work at the AIHA, the plaintiff was diagnosed to be suffering from severe chronic anxiety and panic attacks and undergoing medical treatment for these conditions. Notwithstanding his disability, Mr. Arvellos was a qualified employee for his position, satisfying not only the skills required but also the experience, education, and all job-related requirements of the position Mr. Arvellos held at the AIHA.

As part of his treatment for the chronic anxiety and panic attacks, the plaintiff's treating physician prescribed Mr. Arvellos XANAX and Effexor. The first dosage of Xanax was prescribed to be administered in the morning to manage morning anxiety and panic attacks which mostly happened between 8am and 9am. In addition, due to its sedative action it is unsafe to operate an automobile under the sedative effects and drowsiness that occur have subsided. Since Mr. Arvellos drove to work and could only do so safely after the anxiety and panic attacks had subsided and the drowsiness and sedative feeling no longer presented a danger, the plaintiff was arriving at the office between 945am and 10am instead of 9 am. It is important to keep into consideration that Mr. Arvellos is a very dedicated professional and during the three days of employment at the AIHA, the plaintiff left the office after 7pm and 8pm and also have a state of the art office at home which enabled him to work from home in case it was necessary. Mr. Arvellos communicated that to Mrs. Freedman and made himself available to any of the project field offices overseas to contact him during evening hours and weekends if necessary.

On August 11th, 2004, the plaintiff stopped by the Human Resources office to meet with Mrs. Jocelyn

Freedman in order to sign the remaining HR forms. After he finished, Mrs. Freedman asked Mr. Arvellos if there was a reason for his arrival at 10am. The plaintiff told Mrs. Freeman the truth about his medical conditions and the medications he was taking and requested to have a flexible arrival schedule not only because of the medical condition itself but also due to the effects of the medication he was taking. Mrs. Freeman stated that she was happy that he had shared the nature and circumstances of his disabilities with her and that he had no reason to be embarrassed about it. She continued to express her support by mentioning that she had suffered from the same condition a few years earlier and she understood the seriousness of anxiety and panic attacks and Mr. Arvellos' need for requesting one hour flexibility on his arrival at the office in the morning. In addition Mrs. Freedman told Mr. Arvellos that his request was a perfectly reasonable accommodation and that would have no effect on Mr. Arvellos' duties she also stated that AIHA was aware that Mr. Arvellos could be available from his home office in the event that he had to be reached or provide any advice on budgets before 10 am since Mr. Arvellos has an office at home and had direct connection with the office' intranet and network server and had made himself available to work outside AIHA's headquarters' office during previous discussions. In addition, she again reiterated how happy the organization felt by having someone with Mr. Arvellos' professional skills to streamline the workload by bringing new automated solutions on the process of budgets templates and cost analysis.

The plaintiff left Mrs. Freeman (HR) office at 11:45 am on August 11th. Mr. Arvellos returned to his office after lunch at 2pm and was in his office analyzing the current reporting system. At 4pm on the same day the CFO, Mrs. Brocker, who hired Mr. Arvellos and was the person who made all the efforts to have Mr. Arvellos onboard, came into the plaintiff' office and told him that his position was terminated because she was uncomfortable with the idea of working with someone with the plaintiff's medical conditions. She continued by stating that she had decided that she would not even wait the 90 days period which was included in Mr. Arvellos' job offer signed by her when the position was offered. The plaintiff asked Mrs.

4

Brocker four times if he she had spoken to Mrs. Freedman (HR) since he was informed that his request for accommodation on his arrival schedule was granted when he met with her a few hours earlier. Mrs. Brocker evaded the question the first three times and when the plaintiff asked a fourth time and finally Mrs. Brocker replied that "she was Mrs. Freedman superior and as CFO of the organization she did not have to consult with her about anything". After plaintiff's request for reasonable accommodation being granted by HR and subsequent denial and termination of his employment by Mrs. Brocker, the plaintiff realized then that Mrs. Brocker had in fact spoken with Mrs. Freedman and the reason for his discharge was due to Mrs. Brocker' unwillingness to employ and provide reasonable accommodation for a qualified professional with Mr. Arvellos' disability. In addition, the fact that the AIHA cancelled the plaintiff's Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) insurance coverage after the plaintiff's decision to elect his COBRA benefits. Mr. Arvellos had several conversations with Mrs. Freedman within 60 days after electing to receive COBRA benefits. During those conversations, Mr. Arvellos was never informed that AIHA did not receive his written election regarding to his COBRA benefits.

Mr. Arvellos made continuous and unsuccessful attempts to contact AIHA's HR department to communicate that his medications were not being covered. In fact not only Mr. Arvellos had elected his rights to receive health insurance coverage but also received the new insurance card from the insurance company. AIHA's knowledge of plaintiff's disability and Mrs. Brocker subsequent acts constituted intentional and flagrant violation of the rights of the plaintiff and wanton disregards for the well-being and welfare of the plaintiff. The reckless disregard from AIHA' s of its fiduciary duty was a clear indication to the plaintiff that Mrs. Brocker and the AIHA decision were based on financial reasons for their unjust, reckless and negligent actions against Mr. Arvellos by avoid having AIHA's group insurance to cover cost related to Mr. Arvellos' treatment.

5

The above described conduct of defendants AIHA and Mrs. Brocker violated the right of the Plaintiff not to be deprived of equal protection under the law on the basis of disability under the Fourteenth Amendment of the United States constitution (Art. XIV, U.S. Constitution).

Since during that week, the plaintiff was only meeting the head of departments, there was no good faith basis to terminate his employment on professional or ethics merits. Furthermore, his work had not even been evaluated due to Mr. Arvellos' scheduled plan for the first week was solely to meet co-workers and become acquainted with the organization's accounting and reporting structures. Not to mention that no disciplinary actions ever took place. The plaintiff simply requested a reasonable accommodation and revealed his medical condition to Mrs. Jocelyn Freeman who promptly agreed it was a condition protected by the American with Disabilities Act and with the reasonability of the plaintiff's request for accommodation. However, Mrs. Brocker overturned the Human Resources decision and wrongfully terminated the plaintiff's employment solely on his disability and the possible financial cost of providing insurance benefits to the plaintiff.

The discriminatory and unexplained circumstances of the plaintiff's termination and the subsequent reckless termination of the plaintiff's COBRA benefits and Mrs. Bricker disregard to the foreseeable health and life threatening consequences of Mrs. Brocker reckless acts of refusing to correct the situation related to plaintiff's COBRA coverage were done willfully, maliciously, deliberately and purposely with the intention of inflicting emotional distress upon the plaintiff or in reckless disregard that it would cause the plaintiff severe emotional distress and inability to afford medical treatment.

The direct and proximate consequences of these wrongful acts took a severe toll on Mr. Arvellos condition to an extend that rendered Mr. Arvellos unable to work for more than a year and resulted in severe distress in his personal life including emotional pain and suffering, mental anguish, loss of

6

enjoyment of life, injury to his professional standing, loss of health, fright, apprehension, loss of self-esteem, worsening anxiety and panick attacks, isolation, and grief.

### Relief Sought

Wherefore plaintiff demands judgment as follows:

1. Compensatory and general damages against the Defendants jointly and severally in an amount to be determined by the jury;
2. Punitive damages in in an amount to be determined by the jury against the defendant AIHA as to each count;
3. Punitive damages in in an amount to be determined by the jury against the defendant Barbara P. Brocker for Intentional Infliction of emotional distress and Negligent Infliction of Emotional Distress;
4. For reasonable attorney fees and costs associated with this action; and
5. For such other relief the Court may deem just and proper.

### JURY DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Respectfully submitted,

*[signature]*

Marcus Arvellos
2123 10th St. NW
Washington, DC 20001
202-387-2505

7